**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**


LEEL DEMITRIUS WILLIAMS,

        Petitioner,

v.                                                                       Case No. 3:16-cv-522-J-32MCR

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et. al.,

        Respondents.

_____

## ORDER

### I.   Status

      Petitioner, Leel Demitrius Williams, an inmate of the Florida penal system, initiated this case by filing a pro se Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody. See Doc. 1 (Petition). Petitioner challenges a state court (Clay County, Florida) judgment of conviction for sale or delivery of cocaine within a 1,000 feet of a church. Doc. 1 at 1. He is currently serving a twenty-year term of incarceration. Respondents filed a Response (Doc. 14; Resp.).[1] Petitioner filed a Reply (Doc. 20) and a memorandum of law (Doc. 28). This case is ripe for review.

_____

[1] Respondents also filed exhibits. The Court refers to the exhibits as "Resp. Ex."

## II. **Governing Legal Principals**

### A. Standard Under AEDPA

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal habeas corpus petition. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), cert. denied, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the petitioner's claims on the merits. See Marshall v. Sec'y Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue an opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation,

> the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning. But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018).

When a state court has adjudicated a petitioner's claims on the merits, a federal court cannot grant habeas relief unless the state court's adjudication of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(1), (2). A state court's factual findings are "presumed to be correct" unless rebutted "by clear and convincing evidence." Id. § 2254(e)(1).

> AEDPA "imposes a highly deferential standard for evaluating state court rulings" and "demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010) (internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (internal quotation marks omitted). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. [at 102] (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003)). The Supreme Court has repeatedly instructed lower federal courts that an unreasonable application of law requires more than mere error or even clear error. See, e.g., Mitchell v. Esparza, 540 U.S. 12, 18 (2003); Lockyer, 538 U.S. at 75 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); Williams v. Taylor, 529 U.S. 362, 410 (2000) ("[A]n unreasonable application of federal law is different from an incorrect application of federal law.").

Bishop v. Warden, GDCP, 726 F.3d 1243, 1253-54 (11th Cir. 2013) (internal citations modified).

## B. Exhaustion and Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. See 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); see also Pope v. Rich, 358 F.3d 852, 854 (11th Cir. 2004) (noting "that Boerckel applies to the state collateral review process as well as the direct appeal process.").

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the ""opportunity to pass upon and correct" alleged violations of its prisoners' federal rights."" Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. Duncan, supra, at 365-366, 115 S. Ct. 887; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

Baldwin v. Reese, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. <u>See</u>, <u>e.g.</u>, <u>Coleman</u>,[2] <u>supra</u>, at 747–748, 111 S. Ct. 2546; <u>Sykes</u>,[3] <u>supra</u>, at 84–85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. <u>See</u>, <u>e.g.</u>, <u>Walker v. Martin</u>, 562 U.S. --, --, 131 S. Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); <u>Beard v. Kindler</u>, 558 U.S. --, --, 130 S. Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. <u>See</u> <u>Coleman</u>, 501 U.S., at 750, 111 S. Ct. 2546.

<u>Martinez v. Ryan</u>, 566 U.S. 1, 9-10 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can

---

[2] <u>Coleman v. Thompson</u>, 501 U.S. 722 (1991).

[3] <u>Wainwright v. Sykes</u>, 433 U.S. 72 (1977).

show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. <u>Ward v. Hall</u>, 592 F.3d 1144, 1157 (11th Cir. 2010). In order for a petitioner to establish cause and prejudice,

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." <u>McCoy v. Newsome</u>, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting <u>Carrier</u>, 477 U.S. at 488, 106 S. Ct. 2639).[4] Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." <u>Id.</u> at 1261 (quoting <u>Carrier</u>, 477 U.S. at 494, 106 S. Ct. 2639).

<u>Wright v. Hopper</u>, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." <u>Carrier</u>, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001).

---

[4] <u>Murray v. Carrier</u>, 477 U.S. 478 (1986).

Ward, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. Schlup, 513 U.S. at 324.

## C. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish ineffective assistance, a person must show that: (1) counsel's performance was outside the wide range of reasonable, professional assistance; and (2) counsel's deficient performance prejudiced the challenger in that there is a reasonable probability that the outcome of the proceeding would have been different absent counsel's deficient performance. Strickland, 466 U.S. at 687.

This two-part Strickland standard also governs a claim of ineffective assistance of appellate counsel. Overstreet v. Warden, 811 F.3d 1283, 1287 (11th Cir. 2016).

When considering deficient performance by appellate counsel,

> a court must presume counsel's performance was "within
> the wide range of reasonable professional assistance." <u>Id.</u> at
> 689, 104 S. Ct. 2052. Appellate counsel has no duty to raise
> every non-frivolous issue and may reasonably weed out
> weaker (albeit meritorious) arguments. <u>See</u> <u>Philmore v.</u>
> <u>McNeil</u>, 575 F.3d 1251, 1264 (11th Cir. 2009). "Generally,
> only when ignored issues are clearly stronger than those
> presented, will the presumption of effective assistance of
> counsel be overcome." <u>Smith v. Robbins</u>, 528 U.S. 259, 288
> (2000) (quoting <u>Gray v. Greer</u>, 800 F.2d 644, 646 (7th
> Cir.1986)); <u>see also</u> <u>Burger v. Kemp</u>, 483 U.S. 776, 784
> (1987) (finding no ineffective assistance of counsel when the
> failure to raise a particular issue had "a sound strategic
> basis").

<u>Id.</u>; <u>see also</u> <u>Owen v. Sec'y, Dep't of Corr.</u>, 568 F.3d 894, 915 (11th Cir. 2009) ("failing

to raise or adequately pursue [meritless issues on appeal] cannot constitute ineffective

assistance of counsel").

To satisfy the prejudice prong of an ineffective assistance of appellate counsel

claim, a petitioner must show a reasonable probability that "but for the deficient

performance, the outcome of the appeal would have been different." <u>Black v. United</u>

<u>States</u>, 373 F.3d 1140, 1142 (11th Cir. 2004); <u>see also</u> <u>Philmore v. McNeil</u>, 575 F.3d

1251, 1264-65 (11th Cir. 2009) (prejudice results only if "the neglected claim would

have a reasonable probability of success on appeal"). Also,

> [a] reasonable probability is a probability sufficient to
> undermine confidence in the outcome." <u>Id.</u>, at 694, 104 S. Ct.
> 2052. It is not enough "to show that the errors had some
> conceivable effect on the outcome of the proceeding." <u>Id.</u>, at
> 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as
> to deprive the defendant of a fair trial, a trial whose result
> is reliable." <u>Id.</u>, at 687, 104 S. Ct. 2052.

Richter, 562 U.S. at 104.  As such, "[a]ppellate counsel might fail to identify a mediocre or obscure basis for reversal without being ineffective under Strickland."  Overstreet, 811 F.3d at 1287 (citation omitted).

For both claims of ineffective assistance of trial counsel and appellate counsel, there is no "iron-clad rule requiring a court to tackle one prong of the Strickland test before the other."  Ward v. Hall, 592 F.3d 1144, 1163 (11th Cir. 2010).  Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa."  Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)).  As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." 466 U.S. at 697.

"The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court decision denying the claim. Richter, 562 U.S. at 105.  As such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010). "Reviewing courts apply a 'strong presumption' that counsel's representation was 'within the wide range of reasonable professional assistance.'" Daniel v. Comm'r, Ala. Dep't of Corr., 822 F.3d 1248, 1262

(11th Cir. 2016) (quoting <u>Strickland</u>, 466 U.S. at 689). "When this presumption is combined with § 2254(d), the result is double deference to the state court ruling on counsel's performance." <u>Id.</u> (citing <u>Richter</u>, 562 U.S. at 105); <u>see</u> <u>also</u> <u>Evans v. Sec'y, Dep't of Corr.</u>, 703 F.3d 1316, 1333-35 (11th Cir. 2013) (en banc) (Jordan, J., concurring); <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004).

## III.    <u>Analysis</u>

### *Ground One*

Petitioner argues that the trial court erred in failing to conduct a complete pretrial <u>Nelson</u>[5] inquiry to address all of his allegations that his trial counsel was not representing him effectively. Doc. 1 at 5.

Respondents allege, and the Court agrees, that this claim is not cognizable on federal habeas review. <u>See</u> Resp. at 13-15. "Any complaint about the lack of a proper <u>Nelson</u> inquiry raises an issue of state law that is not cognizable in this proceeding." <u>Ortiz v. McNeil</u>, No. 3:09-cv-563-J-12TEM, 2010 WL 4983599, at *5 (M.D. Fla. Dec. 2, 2010). The Court must be mindful that the purpose of a federal habeas proceeding is review of the lawfulness of Petitioner's custody to determine whether that custody is in violation of the Constitution or laws or treaties of the United States. <u>See</u> <u>Coleman v. Thompson</u>, 501 U.S. 722 (1991). This Court will not reexamine state court determinations on issues of state law. <u>See</u> <u>Estelle v. McGuire</u>, 502 U.S. 62, 67–68 (1991). The Court will be bound by the Florida court's interpretation of its own laws unless that interpretation breaches a federal constitutional mandate. <u>McCoy v.</u>

---

[5] <u>Nelson v. State</u>, 274 So. 2d 256 (Fla. 4th DCA 1973).

Newsome, 953 F.2d 1252, 1264 (11th Cir. 1992). Since this ground presents a state law claim concerning a ruling by the trial court after a Nelson inquiry, Petitioner is not entitled to federal habeas corpus relief as there has been no breach of a federal constitutional mandate. Consequently, Petitioner's claim raised in Ground One is not cognizable in this habeas proceeding. Ground One is due to be denied.

***Ground Two***

Petitioner alleges that the trial court erred in allowing the state to present collateral crimes evidence that Petitioner sold drugs on other occasions. Doc. 1 at 7.

The state charged Petitioner with the October 8, 2010, sale or delivery of cocaine within 1,000 feet of a church. Resp. Ex. A at 15; 259. The sale occurred between Petitioner and police informant Malisa Alcorn. Prior to trial, trial counsel, on behalf of Petitioner, filed a motion in limine to exclude "any and all statements about . . . Alcorn [having allegedly purchased drugs from [Petitioner] in the past and about [Petitioner] having allegedly sold to other people in the past as well." Resp. Ex. A at 31-32. The trial court conducted a hearing on the motion in which the trial court agreed that such evidence would not be admitted during trial, and the state advised that it instructed Alcorn to not testify about past purchases. Id. at 156.

At trial, Alcorn testified that on October 8, 2010, she, at the direction of police, contacted Petitioner to purchase narcotics. Id. at 111. The controlled buy was to happen at Alcorn's home, and prior to the meeting, police searched the residence and equipped Alcorn with an audio and video recording device that recorded the transaction. Id. at 112. A portion of the recording was played for the jury during

Alcorn's trial testimony. Id. at 266-82. The recording begins with Alcorn waiting for Petitioner outside of her home. Id. at 266. As she waited, an individual named Kevin David approached Alcorn and advised her that he too was waiting on Petitioner. Id. Petitioner finally arrived and immediately told Alcorn about rumors that she was working as an informant for the police. Id. at 272-78. Alcorn denied Petitioner's rumored allegations.

Alcorn testified that she then gave Petitioner $150 in exchange for crack cocaine. Id. at 276. After the transaction, Petitioner searched Alcorn's person for a listening device and accused her of using "police money" to conduct the transaction; however, Petitioner did not locate the wire. Id. at 277-80. According to Alcorn, David then asked Petitioner about separately exchanging crack cocaine for pain medication. Id. at 282. Alcorn testified that Petitioner and David made a transaction at that time. Id. at 282-85. Once Petitioner and David left Alcorn's home, Detective Elvis John Guzman, who watched the transaction from across the street, picked Alcorn up and Alcorn provided the police with the crack cocaine obtained from Petitioner. Id. at 289; 325.

On direct appeal, appellate counsel, on behalf of Petitioner argued that the trial court reversibly erred in allowing the state to admit evidence of Petitioner's separate drug transaction with David. Resp. Ex. G. The state filed an answer brief arguing, among other things, that Petitioner's drug transaction with David was inextricably intertwined with the charged offense. Resp. Ex. I at 34. The First District Court of

Appeal per curiam affirmed Petitioner's judgment and sentence without a written opinion. Resp. Ex. K.

To the extent that the First DCA affirmed the trial court's denial on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. Evidence of criminal activity other than the charged offense is <u>not</u> "extrinsic" when it is: "(1) an uncharged offense which arose out of the same transaction or series of transactions as the charged offense, (2) necessary to complete the story of the crime, or (3) inextricably intertwined with the evidence regarding the charged offense." <u>United States v. Baker</u>, 432 F.3d 1189, 1205 n. 9 (11th Cir. 2005) (quoting <u>United States v. Veltmann</u>, 6 F.3d 1483, 1498 (11th Cir. 1993)). "Evidence, not part of the crime charged but pertaining to the chain of events explaining the context, motive[,] and set-up of the crime, is properly admitted if linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury." <u>United States v. McLean</u>, 138 F.3d 1398, 1403 (11th Cir. 1998). And evidence is inextricably intertwined with the evidence regarding the charged offense if it forms an "integral and natural part of the witness's accounts of the circumstances surrounding the offenses for which the defendant was indicted." <u>United States v. Foster</u>, 889 F.2d 1049, 1053 (11th Cir. 1989).

Here, the audio/video device was continuously recording from the time Alcorn began waiting for Petitioner until she reunited with police. As the state argued in its answer brief on appeal, <u>see</u> Resp. Ex. I, there is no evidence that Alcorn or the officers

knew David would be there, but Alcorn was forced to interact with David and could not leave her home until Petitioner completed his transaction with David. As such, this evidence was inextricably intertwined with the charged offense, and the state never presented evidence that Petitioner sold drugs on another date. Upon review of the record, this Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Ground Two is due to be denied.

### Ground Three

Petitioner contends that trial counsel was ineffective for failing to file a motion to dismiss the Information. Doc. 1 at 8. According to Petitioner, the Information was not based on the sworn testimony of a material witness to the crime, thus, the trial court did not have jurisdiction.

Petitioner raised this claim in his motion for postconviction relief filed pursuant to Florida Rule of Criminal Procedure 3.850. Resp. Ex. M at 5. The trial court denied the claim as follows:

> Defendant alleges he received ineffective assistance from counsel because, although the information was filed without the testimony of a material witness, counsel did not move to dismiss it. Specifically, Defendant argues that the information was improperly based on Detective Guzman's sworn statement that attested to his personal observation of the drug transaction, Guzman did not have "personal knowledge" of said transaction. Further, Defendant avers that the reliability of the confidential informant was not established in the affidavit. Because of these deficiencies,

14

Defendant argues that the Court did not have subject matter jurisdiction.

An officer has personal knowledge of a drug transaction when he or she observes the confidential informant enter and leave the building and can listen to the proceedings through a listening device. Raucho v. State, 915 So. 2d 278, 280 (Fla. 4th DCA 2005) (establishing parameters for reliability of confidential informants and personal knowledge of officers involved in the controlled buy). As Defendant concedes Guzman's affidavit states that he "personally observed" the sale as he and other officers watched and listened to the drug transaction. This clearly constitutes "personal knowledge." Because the affidavit was made by one with personal knowledge and not based on hearsay, there was no need to establish the reliability of the confidential informant. Further, an information is only fatally defective and subject to dismissal if it fails to allege the elements of the charged offense or is so vague that it misleads a defendant or exposes him to double jeopardy. See Fla. R. Crim. P. 3.140(o); Edwards v. State, 128 So. 3d 134, 136 (Fla. 1st DCA 2013). Clearly there was no issue with the Court's subject matter jurisdiction. This claim is patently frivolous and without merit. Accordingly, Ground One is denied.

Resp. Ex. M at 86-87. The First DCA per curiam affirmed the trial court's denial without a written opinion. Resp. Ex. T.

To the extent that the First DCA affirmed the trial court's denial on the merits,[6] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable

---

[6] In looking through the appellate court's affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1194.

application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

Nevertheless, even assuming the state court's adjudication is not entitled to deference, this claim is without merit. The Amended Information that the state proceeded on is signed by the assistant state attorney and certifies "that testimony under oath has been received from the material witness(es) for the offense." Resp. Ex. A at 15. The sworn oath of the prosecutor that he or she received testimony under oath from the material witness or witnesses for the offense is sufficient under Florida law. Bromell v. McNeil, No. 07-61917-CIV, 2008 WL 4540054, at *17 (S.D. Fla. Oct. 10, 2008); Ruiz v. Sec'y, Dep't of Corr., No. 8:06-cv-2086-T-17TGW, 2008 WL 786327, at *4–*5 (M.D. Fla. Mar. 20, 2008) (rejecting a claim of ineffective assistance of counsel for failure to move for dismissal based on a deficient information, unsupported by a sworn statement of a material witness). In State v. Perkins, 977 So.2d 643, 646 (Fla. 5th DCA 2008), the court explained that an assistant state attorney signing the information charging a felony does not have to personally administer the oath and question the material witness or witnesses upon which the charges are based, but must simply receive and consider the sworn testimony. As such, Ground Three is due to be denied.

### Ground Four

Petitioner maintains that trial counsel was ineffective for failing to file a motion to suppress the illegal arrest of Petitioner. He avers that the arrest affidavit did not

establish probable cause for an arrest, nor did it contain sufficient facts to make a

probable cause determination. Doc. 1 at 10. As such, Petitioner contends that a

Franks[7] hearing should have been conducted on the omissions.

Petitioner raised this claim as ground two of his Rule 3.850 motion. Resp. Ex.

M at 52-54. The trial court denied the claim, finding in pertinent part:

> Defendant avers counsel should have moved to suppress his illegal arrest and the search incident to that arrest on the grounds that the affidavit supporting the arrest warrant did not establish probable cause and omitted material facts. Specifically, Defendant avers the affidavit failed to establish the reliability of the confidential informant or her information; the officers' personal knowledge of the drug transaction; the presence of another party during the transaction; and there was a lack of video evidence.
>
> A controlled buy eliminates the need to establish the reliability of the confidential informant, as the controlled buy itself corroborates the informant's credibility. Raucho v. State, 915 So. 2d at 280. A confidential informant completes a successful controlled buy where he or she is searched, given money, observed entering and leaving the building, returns to the officers, and is searched again, revealing drugs. Clark v. State, 635 So. 2d 1010, 1011 (Fla. 1st DCA 1994) (relying on State v. Gieseke, 328 So. 2d 16, 17-18 (Fla. 1976)); Zaner v. State, 444 So. 2d 508, 510 (Fla. 1st DCA 1984).
>
> Here, the record reflects a proper controlled buy occurred with the officers' personal knowledge (Ex. D at 105-43; 163-81.) Clark v. State, 635 So. 2d at 1011; Raucho, 15 So. 2d at 280. Video of the actual transaction was not necessary.

---

[7] Franks v. Delaware, 438 U.S. 154 (1978) (holding that a defendant is permitted to attack a warrant where police intentionally lie or misstate information material to the probable cause determination in the affidavit supporting the warrant in order to deceive the judge into issuing the warrant).

> There was another party present and captured on
> audio and video during the controlled buy. Kevin David was
> present at Defendant's behest and the confidential
> informant's recording device captured a drug transaction
> between Defendant and David. The incidental transaction
> with David did not defeat probable cause, as it was
> inseparable from the controlled buy. Gosciminski v. State,
> 132 So. 3d 678, 693-94 (Fla. 2013). The arrest warrant was
> properly issued and the search incident to arrest was legal.
> § 901.21, Fla. Stat. (2011); Agnello v. United States, 269
> U.S. 20, 30 (1925); Brown v. State, 46 So. 2d 479, 781 (Fla.
> 1950). Ground Two is denied.

Resp. Ex. M at 87-88. The First DCA per curiam affirmed the trial court's denial

without a written opinion. Resp. Ex. T.

To the extent that the First DCA affirmed the trial court's denial on the merits,[8]

the Court will address the claim in accordance with the deferential standard for

federal court review of state court adjudications. Here, Guzman executed the arrest

affidavit after Alcorn, at Guzman's direction, made a controlled buy from Petitioner.

Guzman searched Alcorn before and after the transaction and communicated to Alcorn

through a listening device during her interaction with Petitioner. Resp. Ex. A at 1.

Guzman watched from a distance and positively identified Petitioner when he arrived

at Alcorn's residence because Guzman knew Petitioner from previous interactions. Id.

After the transaction, Guzman immediately picked Alcorn up and she provided him

with the crack cocaine obtained from Petitioner. Id. After a review of the record and

the applicable law, the Court concludes that the state court's adjudication of the claim

---

[8] In looking through the appellate court's affirmance to the circuit court's
"relevant rationale," the Court presumes that the appellate court "adopted the same
reasoning." Wilson, 138 S. Ct. at 1194.

was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Ground Four is due to be denied.

### *Ground Five*

Petitioner alleges that trial counsel was ineffective for failing to file a motion in limine, or contemporaneously object, to exclude references of the alleged drug transaction between Petitioner and David. Doc. 1 at 11

Petitioner raised this claim as ground three of his Rule 3.850 motion. Resp. Ex. M at 55-60. The trial court denied the claim as follows:

> Defendant claims counsel rendered ineffective assistance when she failed to file a motion in limine or to contemporaneously object to references to Defendant's drug transaction with David. He also argues that counsel should have objected to the jury's review of the video during deliberations.
>
> Evidence of an uncharged crime that is an inseparable part of the act at issue is admissible. § 90.402, Fla. Stat. (2011) ("All relevant evidence is admissible, except as provided by law."); Gosciminski v. State, 132 So. 3d 678, 693-94 (Fla. 2013) (quoting Griffin v. State, 639 So. 2d 966, 968 (Fla. 1994) (finding inextricably entwined evidence not Williams rule evidence, but admissible under section 90.402 as necessary to describe the deed at hand).
>
> The transaction with David was unexpected by law enforcement and occurred in the presence of Alcorn (the confidential informant) and police officers by way of audio and video during the controlled buy. It was inseparable from the controlled buy and therefore admissible under section 90.402 (Ex. D at 117-18; 133-37; 172-73); Gosciminski, 132 So. 2d at 693-94. There was no error in failing to object to the jury's review of the evidence in the record. Defendant

has failed to meet his burden under <u>Strickland</u>. Ground
Three is denied.

Resp. Ex. M at 88. The First DCA per curiam affirmed the trial court's denial without a written opinion. Resp. Ex. T.

To the extent that the First DCA affirmed the trial court's denial on the merits,[9] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. As described in Ground Two above, Petitioner's transaction with David was inextricably intertwined with the transaction with Alcorn. Thus, after a review of the record and the applicable law, the Court concludes that the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Ground Five is due to be denied.

### *Ground Six*

Petitioner alleges that trial counsel was ineffective for failing to move to dismiss Petitioner's criminal case because it "was brought about by 'methods that offend a sense of justice' and illegal entrapment by police official." Doc. 1 at 11-12. Petitioner alludes that he has key witnesses to support his claim of entrapment. <u>Id.</u> at 12.

---

[9] In looking through the appellate court's affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." <u>Wilson</u>, 138 S. Ct. at 1194.

Petitioner raised this claim as ground four of his Rule 3.850 motion. Resp. Ex.

M at 60-65. The trial court denied the claim as follows:

> Defendant states he received ineffective assistance when counsel failed to move to dismiss the prosecution based on entrapment. Defendant argues that several citizens were approached by Detective Guzman about making controlled buys, and the confidential informant became involved to reduce a lengthy sentence. He further argues there was no evidence he had previously sold drugs at that location or that the drug transaction would have occurred at that location absent law enforcement involvement.

> There are two theories of entrapment: 1) egregious law enforcement conduct that amounts to a denial of due process; or 2) one was induced to commit a crime he was otherwise not predisposed to commit. § 777.201, Fla. Stat. (2010); <u>Jones v. State</u>, 114 So. 3d 1123, 1125-26 (Fla. 1st DCA 2013).

> It is not egregious conduct for law enforcement to recruit confidential informants. The only recruitment by law enforcement that is relevant to this case, however, was that of Alcorn. At trial, the State disclosed all the relevant facts about her recruitment, the charges she faced, and the possible benefits she would receive for participating as a confidential informant. (Ex. D at 105-09.)

> Given the circumstances of this case, Defendant cannot demonstrate that he was induced or coerced into conducting a drug transaction. Alcorn then testified that she had an ongoing friendship with Defendant that predated her work as a confidential informant. (Ex. D at 105.) Also, a drug transaction between Defendant and another individual who <u>Defendant</u> invited to Alcorn's house was recorded during the controlled buy. (Ex. D at 114; 117-18; 133-34.) Further, Defendant specifically mentioned to Alcorn that "the word on the street" was that she was working for law enforcement. (Ex. D. at 123-25.)

> It is speculation at best that any form of entrapment occurred merely because Alcorn invited Defendant to her

home to make the drug transaction and that home just happened to be located beside a church. Ground Four is denied.

FN2 Defendant mentions several witnesses counsel should have called. The Court addressed this with defense counsel and Defendant at a pretrial hearing conducted on January 17, 2012. The Court invited the defense to bring these witnesses before the Court. Counsel stated she still had no names and addresses for these witnesses. (Ex. E.)

Resp. Ex. M at 89-90. The First DCA per curiam affirmed the trial court's denial without a written opinion. Resp. Ex. T.

To the extent that the First DCA affirmed the trial court's denial on the merits,[10] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. Evidence that Petitioner was suspicious about Alcorn working as an informant and his independent decision to invite David over to Alcorn's home for a separate drug transaction does not support an entrapment defense. See Hester v. United States, 335 F. App'x 949, 952 (11th Cir. 2009) (holding "the mere suggestion of a crime or initiation of contact is not enough. Rather, inducement requires an element of persuasion or mild coercion.").

Further, as to Petitioner's claim that he had potential witnesses that would testify to a defense of entrapment, the trial court conducted a pretrial colloquy about these potential witnesses. Resp. Ex. A at 157. Petitioner advised the trial court that he had potential witnesses he wished to depose, and trial counsel advised the trial

---

[10] In looking through the appellate court's affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1194.

court that she did not yet have names or addresses for these alleged witnesses. Id. at 157-58. During trial, Petitioner advised the trial court that he wished to call David as a defense witness, but trial counsel explained to the trial court that David's potential testimony would be more harmful than helpful to Petitioner's case. Resp. Ex. B at 353-54. As such, the state court's adjudication denying relief is neither contrary to nor an unreasonable application of Strickland because Petitioner cannot demonstrate deficient performance or prejudice from counsel's failure to file a motion to dismiss. Also, the state court's adjudication was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. The claim in Ground Six is due to be denied.

### *Ground Seven*

Petitioner alleges that trial counsel was ineffective for failing to object to the introduction of the audio/video evidence of the controlled buy based on the chain of custody; authentication; procedure; and unreliable evidence of date, time, and display of passage of time. Doc. 1 at 12.

He raised this claim in ground five of his Rule 3.850 motion. Resp. Ex. M at 65-69. The trial court denied the claim, finding in pertinent part:

> Defendant contends counsel should have objected to the audio/video that was introduced by the State without a proper foundation. He alleges counsel should have inquired as to chain of custody procedures, the authenticity of the tape, and alleged that the evidence was tampered with or falsified.
>
> An audio or video tape is properly authenticated if one who has personal knowledge of the conversation confirms that the contents are a fair and accurate

memorialization of the events or discussion. <u>McCoy v. State</u>, 853 So. 2d 396, 403-04 (Fla. 2003). Further, relevant physical evidence is admissible unless there is an indication of tampering. <u>Armstrong v. State</u>, 73 So. 3d 155, 171 (Fla. 2011). The party seeking to exclude the evidence bears the burden of demonstrating possible tampering. <u>Id.</u> A mere possibility of tampering is insufficient. <u>Id.</u>

Counsel made a sufficient objection to the introduction of the audio/video for lack of foundation, which was sustained by the Court. (Ex. D at 115-16.) Subsequently, Alcorn testified that she was the confidential informant, the audio/video was made by her during the controlled buy, she had reviewed it, and it was a fair and accurate description of the events of the incident. (Ex. D at 106-16.) Counsel followed with the same objection, this time overruled by the Court. (Ex. D at 116.) As part of her testimony, Alcorn explained what was being seen and heard on the tape. (Ex. D at 117-40.)

Defendant also alleges that counsel should have objected on the grounds of evidence tampering, but provides only unsupported speculation that there was any issue with the chain of custody. Defendant has not demonstrated that counsel provided ineffective assistance in this matter, nor has he made a showing of prejudice. As Defendant did not meet his burden under <u>Strickland</u>, Ground Five is denied.

Resp. Ex. M at 90-91. The First DCA per curiam affirmed the trial court's denial without a written opinion. Resp. Ex. T.

To the extent that the First DCA affirmed the trial court's denial on the merits,[11] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. As the trial court noted, when the state initially attempted to move the audio/video recording into evidence, trial counsel

---

[11] In looking through the appellate court's affirmance to the circuit court's "relevant rationale," the Court presumed that the appellate court "adopted the same reasoning." <u>Wilson</u>, 138 S. Ct. at 1194.

objected based on a lack of foundation. Resp. Ex. B at 264. The trial court sustained the objection. Id. In response, Alcorn testified that she had an opportunity to review the video prior to trial and confirmed that it was a fair, truthful, and accurate depiction of the events that happened on October 8, 2010. Id. at 264-65. Trial counsel had no other meritorious reasons to object to this evidence. Upon review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Accordingly, Ground Seven is due to be denied.

### Ground Eight

Petitioner argues that trial counsel was ineffective for failing to impeach Alcorn and for failing to adequately subject Guzman to cross-examination. Doc. 1 at 13.

Petitioner raised this claim in ground six of his Rule 3.850 motion. Resp. Ex. M at 69-72. The trial court denied the claim as follows:

> Defendant alleges counsel failed to impeach Alcorn and failed to effectively cross-examine and impeach Guzman. He alleges that a discrepancy in Alcorn's deposition testimony and trial testimony about who searched her prior to the controlled buy would diminish her credibility. According to Defendant's motion, Alcorn could not remember who searched her during the deposition but testified at trial that Guzman searched her. The Court finds this irrelevant and of no consequence to Alcorn's testimony. Counsel was not ineffective for failing to bring out the slight inconsistency.
>
> Defendant claims that counsel should have investigated Guzman's deposition testimony about a traffic

stop; why Guzman did not abort the controlled buy when Alcorn failed to follow instructions; and why Guzman left David out of his probable cause affidavit. He further states that counsel should have called Guzman as a rebuttal witness and asked why the video did not [ ] contain [a] date/time stamp and appeared to stop and restart.

A defendant in a criminal case may cross-examine a witness concerning the information about which the witness testified during direct examination. Lugo v. State, 845 So. 2d 74, 101-02 (Fla. 2003) (citing Oakes v. State, 746 So. 2d 510, 511 (Fla. 5th DCA 1999)). The Court has reviewed counsel's cross-examination of Guzman. It was within the scope of direct examination. (Ex. D at 163-90.) Counsel pointed out to the jury that Alcorn did not follow instructions and had contact with David out of the detectives' view, inferring that drugs could have been exchanged during that time. (Ex. D at 189-90.) Counsel also questioned Guzman about why he did not mention David in his report. (Ex. D at 189-90.) Had counsel attempted to question Guzman about matters outside the scope of direct examination, an objection from the State would have been satisfied.

The questions Defendant alleges counsel should have asked Guzman in rebuttal (e.g., why there was no date and time stamp and why the video appeared to start and stop) were subsumed by Alcorn's authentication of the audio/video. Hence, it was unnecessary to attempt to call Guzman as a witness to answer those questions.

Defendant has not demonstrated that counsel was ineffective, or that he was prejudiced by her failure to ask questions or explore avenues he now, in hindsight, argues should have addressed. Ground Six is denied.

Resp. Ex. M at 91-92. The First DCA per curiam affirmed the trial court's denial

without a written opinion. Resp. Ex. T.

To the extent that the First DCA affirmed the trial court's denial on the merits,[12] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. Trial counsel conducted an effective cross-examination of Guzman. Notably, trial counsel elicited testimony from Guzman that he instructed Alcorn to not make contact with a third party during the controlled buy to avoid any appearance that someone other than Petitioner provided her with the drugs. Resp. Ex. B at 339. He admitted that Alcorn disregarded that advice and communicated with David when he approached her. Id. Trial counsel also elicited testimony from Guzman that there was a period of time during the controlled buy when he lost sight of Alcorn, David, and Petitioner. Id. Thus, after a review of the record and the applicable law, the Court concludes that the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Accordingly, Ground Eight is due to be denied.

### Ground Nine

Petitioner contends that trial counsel was ineffective for failing to file a motion to dismiss the Amended Information because it lacked the elements necessary to support the charged offense. Doc. 1 at 14. According to Petitioner, the Amended Information failed to allege the location of the drug transaction, that Petitioner sold a

---

[12] In looking through the appellate court's affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1194.

controlled substance to a confidential informant, or that Petitioner had "knowledge of the presence of the substance."

Petitioner raised this claim as ground seven of his Rule 3.850 motion. Resp. Ex. M at 72-73. The trial court denied the claim, finding in relevant part:

> Defendant avers counsel rendered ineffective assistance when she failed to move to dismiss a defective information that lacked the elements of the charged offense. The purpose of a charging document is to inform an individual of the offense of which he is accused. Fla. R. Crim. P. 3.140(d). After review of the information, the Court finds it sufficiently alleges the offenses of which Defendant was accused and tracks the statutes violated. (Ex. F.) Fla. R. Crim. P. 3.140. Counsel was not deficient for failing to challenge the information. Ground Seven is denied.

Resp. Ex. M at 92. The First DCA per curiam affirmed the trial court's denial without a written opinion. Resp. Ex. T.

To the extent that the First DCA affirmed the trial court's denial on the merits,[13] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. The Amended Information properly charged Petitioner with the sale, manufacture, or delivery of a controlled substance within 1,000 feet of a church or place of worship. Resp. Ex. A at 15. Thus, after a review of the record and the applicable law, the Court concludes that the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was

---

[13] In looking through the appellate court's affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." <u>Wilson</u>, 138 S. Ct. at 1194.

not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Accordingly, Ground Nine is due to be denied.

### Ground Ten

Petitioner alleges that trial counsel was ineffective for failing to object to the prosecutor's improper statements during closing arguments. Doc. 1 at 14. According to Petitioner, the prosecutor made remarks that: alluded to facts not in evidence; were highly prejudicial; vouched for and bolstered the credibility of state witnesses; and inferred Pastor Salazar would not lie due to religious status. Id. In support of his argument, Petitioner cites to the following pages of Resp. Ex. B: 364-69; 370-71; 376; 379-80; 392; and 395.

Petitioner raised this claim as ground eight of his Rule 3.850 motion. Resp. Ex. M at 74-78. The trial court denied the claim, finding in relevant part:

> Defendant claims that counsel should have objected to five allegedly improper prosecutorial comments made during closing argument: 1) the jury heard what Defendant said in the video; 2) the jury did not have to think hard about the element of "1,000 feet from a church" because Pastor Salazar testified; 3) The video shows Defendant's face and a drug transaction; 4) The explanation of confidential informants in relation to Defendant's case; and 5) Argument that vouched for Alcorn's credibility.
>
> Parties are allowed wide latitude in arguing to the jury during closing arguments. Patrick v. State, 104 So. 3d 1046, 1065 (Fla. 2012). The State may make logical inferences and advance all legitimate arguments available. Id. The Court has reviewed the prosecutor's comments in context and finds counsel's performance was not deficient. (Ex. D at 211-34; 242-51.) All of the challenged statements are supported by the record or are logical inferences that could be drawn from the evidence presented at trial. (Ex. D

at 100-43; 163-90) Id. No error occurred. Accordingly,
Ground Eight is denied.

Resp. Ex. M at 92-93. The First DCA per curiam affirmed the trial court's denial without a written opinion. Resp. Ex. T.

To the extent that the First DCA affirmed the trial court's denial on the merits,[14] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. A reviewing court must evaluate an allegedly improper comment in the context of both the prosecutor's entire closing argument and the trial as a whole, because "[c]laims of prosecutorial misconduct are fact-specific inquiries which must be conducted against the backdrop of the entire record." United States v. Hall, 47 F.3d 1091, 1098 (11th Cir.1995); accord United States v. Young, 470 U.S. 1, 11 (1985) ("[A] criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context; only by doing so can it be determined whether the prosecutor's conduct affected the fairness of the trial."). In context, the Court finds that the prosecutor's comments were not so improper as to affect the fairness of trial. Instead, the statements were a summary of the evidence. Notably, the state presented a video of the drug transaction along with eyewitness testimony identifying Petitioner as to perpetrator.

Accordingly, upon review of the record, the Court finds that the state court's

---

[14] In looking through the appellate court's affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1194.

adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Ground Ten is due to be denied.

### *Ground Eleven*

Petitioner argues that trial counsel was ineffective for failing to file a sufficient motion for new trial. Doc. 1 at 15-16. According to Petitioner, trial counsel's boilerplate motion for new trial did not sufficiently challenge the weight of the evidence and failed to allege that Petitioner did not receive a fair trial due to Alcorn's drug addiction.

Petitioner raised this claim as ground nine of his Rule 3.850 motion. Resp. Ex. M at 79.[15] The trial court denied the claim as follows:

> Defendant states counsel provided ineffective assistance when she failed to file a sufficient motion for new trial based on the weight and sufficiency of the evidence. Defendant claims counsel should have challenged: 1) the information; 2) the affidavit for probable cause; 3) improper introduction of evidence of a collateral crime; 4) entrapment; 5) admission of the audio and video evidence; 6) inconsistent testimony by state's witnesses; and 7) improper prosecutorial remarks. After review of the motion for new trial, the Court finds no error. (Ex. G.) All of the listed issues have been addressed by the Court in Grounds One-Eight, <u>supra</u>. In sum, counsel did not provide ineffective assistance by failing to move for a new trial on the grounds alleged by Defendant in this claim. Ground Nine is denied.

---

[15] It appears that Respondents omitted a page of Petitioner's Rule 3.850 motion when they filed Resp. Ex. M. Resp. Ex. M at 79-80.

Resp. Ex. M at 93. The First DCA per curiam affirmed the trial court's denial without a written opinion. Resp. Ex. T.

To the extent that the First DCA affirmed the trial court's denial on the merits,[16] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. In doing so, the Court acknowledges its denial of Petitioner's allegations in Grounds Three through Ten above. Further, the weight of the evidence demonstrating Petitioner's guilt contradicts his current assertion that the trial court would have granted the motion for new trial had trial counsel argued these specific points. Thus, upon review of the record, this Court finds that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Ground Eleven is due to be denied.

### Ground Twelve

Petitioner contends that appellate counsel was ineffective for failing to argue on direct appeal that the trial court lacked subject matter jurisdiction because the charging document was defective. Doc. 1 at 16. In support of this argument, Petitioner maintains that the Information and Amended Information failed to properly charge

---

[16] In looking through the appellate court's affirmance to the circuit court's "relevant rationale," the Court presumed that the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1194.

the offense. He further alleges that the Information and Amended Information were not based upon the sworn testimony of a material witness.

Petitioner raised this claim in his petition alleging ineffective assistance of appellate counsel. Resp. Ex. Z at 6. The First DCA denied the claim on the merits. Resp. Ex. BB. As such, there is a qualifying state court decision; and the Court will address this claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on this claim.

Nevertheless, even assuming the state court's adjudication is not entitled to deference, this claim is also without merit as detailed in Grounds Three and Nine above. The Amended Information, which the state proceeded on, is signed by the assistant state attorney and certifies "that testimony under oath has been received from the material witness(es) for the offense." Resp. Ex. A at 15. The sworn oath of the prosecutor that he or she received testimony under oath from the material witness or witnesses for the offense is sufficient under Florida law. See Bromell, No. 07-61917-CIV, 2008 WL 4540054, at *17; Ruiz, No. 8:06-cv-2086-T-17TGW, 2008 WL 786327, at *4–*5. Further, the Amended Information properly charged Petitioner with the sale, manufacture, or delivery of a controlled substance within 1,000 feet of a church or

place of worship. Resp. Ex. A at 15; see also DeBenedictis v. Wainwright, 674 F.2d 841, 843 (11th Cir. 1982) (holding the sufficiency of a state information not properly the subject of federal habeas corpus relief unless it is so deficient that the court is deprived of jurisdiction). Ground Twelve is due to be denied.

### Ground Twelve(b)

Petitioner asserts three sub-claims of ineffective assistance of appellate counsel. Doc. 1 at 17. First, he alleges that appellate counsel was ineffective for failing to raise a claim on direct appeal that the trial court erred in refusing to allow trial counsel to elicit evidence that Alcorn had a drug addiction and the nature of her pending criminal charges. Second, Petitioner contends that appellate counsel was ineffective for failing to argue that the trial court erred in allowing the state to elicit "direct observation testimony" from the officers. Finally, Petitioner avers that appellate counsel was ineffective for failing to argue that the trial court erred in allowing Alcorn and the detective to testify regarding generalized, common practices of cocaine dealers without being deemed experts.

Petitioner raised these claims as ground two of his petition alleging ineffective assistance of appellate counsel. Resp. Ex. Z at 9-12. The First DCA denied the claims on the merits. Resp. Ex. BB. As such, there is a qualifying state court decision, and the Court will address this claim in accordance with the deferential standard for federal court review of state court adjudications.

As to the first sub-claim, the state filed a pretrial motion in limine to exclude any evidence that Alcorn was a drug user. Resp. Ex. A at 153. The trial court conducted

a hearing on the motion during which it found that because there was no evidence that Alcorn was under the influence of drugs at the time of the offense so as to impair her ability to recall the events, any evidence of prior drug use was improper character evidence. Id. The Court agrees that any collateral instances of Alcorn's prior drug use was irrelevant and inadmissible. See United States v. Holman, 680 F.2d 1340, 1353 (11th Cir. 1982) (holding evidence of witness' prior drug use at other, unspecified dates constituted inadmissible extrinsic character evidence). Further, during the motion in limine hearing, the trial court found that trial counsel could not inquire of Alcorn about the nature of her pending charges for battery on a law enforcement officer and disorderly conduct. Resp. Ex. A at 154. The trial court and trial counsel agreed to narrow any such questions to whether Alcorn had a pending charge for a third degree felony and whether Alcorn received any preferential treatment for her trial testimony. Id. at 154-55. At trial, Alcorn testified that she had three prior felony convictions, four misdemeanor convictions for crimes of dishonesty, and a pending third degree felony charge. Resp. Ex. B at 256-57.

Because evidence about Alcorn's drug addiction and the nature of her prior convictions or pending charges were inadmissible, appellate counsel cannot be deficient for failing to raise this claim on appeal. Further, since the jury considered Alcorn's extensive criminal history when evaluating her credibility, Petitioner cannot demonstrate that but for appellate counsel's failure to raise this claim, the outcome of his appeal would have been different. After a review of the record and the applicable law, the Court concludes the state court's adjudication of this sub-claim was not

contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. This sub-claim is due to be denied.

As to sub-claim two, the trial court heard pretrial argument from the parties regarding whether Guzman would be allowed to identify Petitioner during trial as the individual who conducted the sale. Resp. Ex. A at 155. Because the officers did not personally observe the sale but rather only heard the audio, trial counsel argued any such observation testimony would be hearsay. Id. The trial court ruled that the officers could only testify to voice identification if the state laid a proper predicate before the identification. Id. at 156. At trial, Guzman testified that he saw Petitioner arrive and make the initial contact with Alcorn. Resp. Ex. B at 323. Once they made contact, Guzman saw Alcorn, David, and Petitioner walk into a porched-in area where Guzman lost sight of them. Id. at 324. Guzman testified that he could still hear the audio of the drug interaction, but Guzman did not testify that he saw the transaction. Id. at 313-41. Because Guzman did not testify that he personally and in real-time observed the transaction, Petitioner cannot demonstrate that but for appellate counsel's failure to raise this claim, the outcome of the appeal would have been different. After a review of the record and the applicable law, the Court concludes the state court's adjudication of this sub-claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on

an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. This sub-claim is due to be denied.

Finally, as to the third sub-claim, Petitioner maintains that Guzman and Alcorn were improperly allowed to testify to common practices of cocaine dealers and cocaine terminology. Based on a review of Petitioner's petition alleging ineffective assistance of appellate counsel, it appears that he is challenging these witnesses' testimony regarding the definition of "extra piece," "dime," and "yard and a half." Resp. Ex. Z at 11.

At trial, Guzman testified that he had been a narcotics detective for two years and was familiar with the different slang terms that drug dealers use for cocaine and amounts of cocaine. Resp. Ex. B at 328. Notably, he stated a "dime" equates to ten dollars worth of cocaine, a "dub" is twenty dollars, and a "yard" is a hundred dollars. Id. at 328-29. There was nothing improper about permitting Guzman to testify about the use of these words. See United States v. Carrazana, 921 F.2d 1557, 1567 (11th Cir. 1991) (holding "[l]aw enforcement officers may testify as to the meaning of slang or code words"). Further, Alcorn testified at trial that during the transaction, Petitioner gave her a "dime" and told her to "hit a piece." Resp. Ex. B at 274. In making such statements, she was merely testifying to Petitioner's statements heard on the audio recording of the transaction. Id. Therefore, after a review of the record and the applicable law, the Court concludes the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable

determination of the facts in light of the evidence presented in the state court proceedings. The third sub-claim is without merit, and Ground Twelve(b) is due to be denied.

### *Ground Twelve(c)*

Petitioner alleges that appellate counsel was ineffective for failing to argue that a "fatal variance" between the Information and the Amended Information amounted to fundamental error. Doc. 1 at 17-18. He alleges that the Amended Information charged a separate and distinct crime than that charged in the original Information. He further argues that appellate counsel should have argued that the trial court's denial of Petitioner's request for a continuance following the state filing the Amended Information was highly prejudicial.

Petitioner raised this claim as ground three of his petition alleging ineffective assistance of appellate counsel. Resp. Ex. Z at 12-15. The First DCA denied the claim on the merits. Resp. Ex. BB. As such, there is a qualifying state court decision, and the Court will address this claim in accordance with the deferential standard for federal court review of state court adjudications.

Initially, appellate counsel cannot be deficient for failing to raise this issue on appeal because trial counsel's failure to object to the Amended Information precluded appellate review. See McDuffie v. State, 135 So. 3d 317, 320 (Fla. 1st DCA 2012) (noting that trial counsel's failure to object to amended information prohibited appellate court from reviewing the propriety and timeliness of the amended information). Where an issue is not preserved for appellate review, appellate counsel's

failure to raise the issue is not constitutionally deficient as it is based on the reasonable conclusion that the appellate court will not hear the issue on its merits. Diaz v. Sec'y Dep't of Corr., 402 F.3d 1136, 1142 (11th Cir. 2005); Atkins v. Singletary, 965 F.2d 952, 957 (11th Cir. 1992); Francois v. Wainwright, 741 F.2d 1275, 1285–86 (11th Cir. 1984).

Nevertheless, even assuming this issue was preserved for appellate review, Petitioner cannot demonstrate prejudice because this claim is meritless. An amended information charging a new crime arising from the same criminal episode may be filed at any time during the speedy trial period, up to and including the 175th day. See Fla. R. Crim. P. 3.191; see also Pezzo v. State, 903 So. 2d 960, 962 n.2. (Fla. 1st DCA 2005) (holding that state may file a charging document at any time within the speedy trial period, and although the state may amend an information after the speedy trial time expires, the state may not circumvent the intent and effect of the speedy trial rule by lying in wait until the speedy trial time expires and then amending an existing information in such a way that results in the levying of new charges (if those new charges arise from the same facts and circumstances giving rise to the original charge)).

Petitioner's speedy trial period began to run on August 4, 2011, when he was arrested and taken into custody. Resp. Ex. A at 2; see also Fla. R. Crim. P. 3.191. On August 23, 2011, the state filed the original Information charging Petitioner with "possess[ion] with intent to sell, manufacture or deliver cocaine within 1000 feet of a church." Resp. Ex. A at 8. On January 3, 2012, day 152 of Petitioner's speedy trial

period, the state filed an Amended Information charging Petitioner with the "sale, manufacture, [or] deliver[y] [of] cocaine within 1000 feet of a church," a new offense. Id. at 15; see also State v. Oliver, 581 So. 2d 1304, 1305 (Fla. 1991) (holding that the Florida legislature intended for possession and sale of the same narcotic to be separate crimes under section 775.021(4), Florida Statutes). Petitioner's jury selection commenced on January 17, 2012, and his trial began on January 19, 2012. Resp. Ex. B at 230.

The state's decision to file the Amended Information charging the new offense within Petitioner's speedy trial period was proper. Indeed, a review of the transcript from the January 3, 2012, final pretrial hearing during which the state filed the Amended Information demonstrates Petitioner was not prejudiced by the state's decision. Resp. Ex. D at 19. At the final pretrial, trial counsel waived formal reading of the Amended Information and entered a not guilty plea on behalf of Petitioner. Id. at 23. She informed the trial court that she was prepared to go to trial on January 17, 2012, and noted that Petitioner had not waived his speedy trial rights. Id. at 23-24. Petitioner also addressed the trial court and while he explained that he and his attorney were not "seeing eye-to-eye" on a few issues, he advised the trial court that he was "ready to go." Id. at 26. As such, based on Petitioner's own representations to the trial court, he cannot demonstrate that but for appellate counsel's failure to raise this issue, the outcome of the appeal would have been different. After a review of the record and the applicable law, the Court concludes the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an

unreasonable application of clearly established federal law, and was not based on an

unreasonable determination of the facts in light of the evidence presented in the state

court proceedings. Ground Twelve(c) is due to be denied.

### *Ground Twelve(d)*

Petitioner contends that appellate counsel was ineffective for failing to allege

that the trial court committed fundamental error when it failed to instruct the jury

regarding a third person, who possibly had the drugs, being present during the

transaction. Doc. 1 at 19.

Petitioner raised this claim as ground four of his petition alleging ineffective

assistance of appellate counsel. Resp. Ex. Z at 15. The First DCA denied the claim on

the merits. Resp. Ex. BB. As such, there is a qualifying state court decision, and the

Court will address this claim in accordance with the deferential standard for federal

court review of state court adjudications.

In his petition alleging ineffective assistance of appellate counsel, Petitioner

argued that failure to include this jury instruction "prevented the jury from being able

to choose which of the two men inside the home actually sold or delivered a controlled

substance." Resp. Ex. Z at 15. However, Petitioner cannot demonstrate that he was

prejudiced by the omission of such an instruction. The state presented video and audio

evidence depicting Petitioner engaging in a drug transaction with Alcorn. Resp. Ex. B

at 264-76. Alcorn testified at trial that David never gave her crack cocaine and she

never gave David any money. Id. at 307. Nevertheless, during trial counsel's closing

arguments, she argued that Alcorn's memory of the transaction was flawed, that

Alcorn could have hidden the drugs prior to the alleged transaction, that David may have played a role in the transaction, and the video may not have shown everything that transpired. Id. at 384-92. The jury was then properly instructed on the elements of the crime and the reasonable doubt standard. Resp. Ex. C at 401-14. The jury found Petitioner guilty as charged.

Considering the record evidence, Petitioner cannot demonstrate that but for appellate counsel's failure, the outcome of the appeal would have been different. After a review of the record and the applicable law, the Court concludes the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Ground Twelve(d) is due to be denied.

### Ground Twelve(e)

Petitioner contends that appellate counsel was ineffective for failing to challenge on direct appeal the state's opening and closing arguments. Doc. 1 at 19-20. According to Petitioner, "because trial counsel failed to object to highly prejudicial comments and facts not in evidence, they rose to the level of fundamental error and appellate counsel would have prevailed on direct review by raising this much stronger ground." Id. at 20.

Petitioner raised this claim as ground five of his petition alleging ineffective assistance of appellate counsel. Resp. Ex. Z at 17-18. The First DCA denied the claim on the merits. Resp. Ex. BB. As such, there is a qualifying state court decision, and

the Court will address this claim in accordance with the deferential standard for federal court review of state court adjudications.

Petitioner's claim that appellate counsel was ineffective for failing to raise the issue of prosecutorial misconduct notwithstanding trial counsel's failure to preserve it fails to satisfy Strickland. In Florida, a claim of prosecutorial misconduct based upon improper comments during closing or opening arguments must generally first be raised in the trial court to be preserved for appellate review. See Brooks v. State, 762 So. 2d 879 (Fla. 2000) (as a general rule, failing to raise a contemporaneous objection when improper closing argument comments are made waives any claim concerning such comments for appellate review); Allen v. State, 662 So. 2d 323, 328 (Fla. 1995) (to preserve allegedly improper prosecutorial comment in closing argument for appellate review, defendant must object to comment and move for mistrial) (citing Parker v. State, 456 So. 2d 436, 443 (Fla. 1984)). Petitioner admits that trial counsel did not object to any allegedly improper comment during the state's opening or closing arguments. Doc. 1 at 20. In light of trial counsel's failure to preserve the issue for appellate review, appellate counsel's failure to raise the issue was not constitutionally deficient. See Diaz, 402 F.3d at 1142; Atkins, 965 F.2d at 957; Francois, 741 F.2d at 1285–86.

Nevertheless, at stated in the Court's analysis of Ground Ten above, the prosecutor's comments, when viewed in context, were not so improper as to affect the fairness of the trial. Instead, the statements were a summary of the evidence. Resp. Exs. B at 239-48, 361-84, 392-400; C at 401. Notably, the state presented a video of

the drug transaction along with eyewitness testimony identifying Petitioner as the perpetrator. Therefore, after a review of the record and the applicable law, the Court concludes the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Ground Twelve(e) is due to be denied.

### Ground Twelve(f)

Petitioner argues that appellate counsel was ineffective for failing to challenge the trial court's denial of his motion for judgment of acquittal because the "legal adequacy" of the evidence was insufficient to support the conviction. Doc. 1 at 19-21.

Petitioner raised this claim as ground six of his petition alleging ineffective assistance of appellate counsel. Resp. Ex. Z at 19-20. The First DCA denied the claim on the merits. Resp. Ex. BB. As such, there is a qualifying state court decision, and the Court will address this claim in accordance with the deferential standard for federal court review of state court adjudications.

When reviewing an insufficiency of the evidence claim in a habeas petition, a federal court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). The court must assume that the jury resolved any evidentiary conflicts in favor of the prosecution, and the court must defer to that resolution. Id. To prove the

crime of sale or delivery of cocaine within 1,000 feet of a church, the state must prove the following four elements: (1) Petitioner sold or delivered a certain substance; (2) Petitioner sold or delivered a certain substance within 1,000 feet of a physical place for worship at which a church or religious organization regularly conducts religious services; (3) the substance was cocaine; and (4) Petitioner had knowledge of the presence of the substance. Resp. Ex. A at 51.

As detailed above, the state presented audio/video evidence of Petitioner providing Alcorn drugs in exchange for $150. Resp. Ex. B at 272-89. The substance Petitioner gave Alcorn tested positive for crack cocaine. Id. at 346-47. Guzman used a laser measure to measure the distance between the residence where the transaction occurred and the church. Id. at 329-30. The distance was 548 feet. Id. Paul Salazar testified that at the time of the drug transaction, religious activities were regularly conducted in the subject church. Id. at 251. Taken in the light most favorable to the state, the Court finds there was sufficient evidence to permit a rational trier of fact to find Petitioner guilty of sale or delivery of cocaine within 1,000 feet of a church. Thus, Petitioner cannot demonstrate that but for appellate counsel's alleged error, the outcome of the appeal would have been different. Upon review of the record, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Ground Twelve(f) is due to be denied.

### *Ground Twelve(g)*

Petitioner claims that appellate counsel was ineffective for failing to raise a claim that the trial court erred in allowing the state to introduce the audio/video evidence of the transaction over trial counsel's "lack of foundation" objection. Doc. 1 at 19, 22.

Petitioner raised this claim as ground seven of his petition alleging ineffective assistance of appellate counsel. Resp. Ex. Z at 22-23. The First DCA denied the claim on the merits. Resp. Ex. BB. As such, there is a qualifying state court decision, and the Court will address this claim in accordance with the deferential standard for federal court review of state court adjudications. In doing so, the Court adopts its reasoning in Ground Seven above that the video/audio evidence was properly admitted. As such, Petitioner cannot demonstrate ineffective assistance of appellate counsel for failing to raise this issue. Upon review of the record, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Ground Twelve(g) is due to be denied.

### *Ground Twelve(h)*

Petitioner alleges that appellate counsel was ineffective for failing to allege that the trial court imposed a vindictive sentence. Doc. 1 at 19, 22. In support of this

argument, Petitioner contends that prior to trial the state made a plea offer of four years, and the trial court's ultimate sentence was five-times the plea offer. Id. at 22.

Petitioner raised this claim as ground nine of his petition alleging ineffective assistance of appellate counsel. Resp. Ex. Z at 26-29. The First DCA denied the claim on the merits. Resp. Ex. BB. As such, there is a qualifying state court decision, and the Court will address this claim in accordance with the deferential standard for federal court review of state court adjudications.

Due process prevents a court from imposing an increased sentence after reconviction following a new trial if that increase is motivated by vindictiveness on the part of the sentencing judge. See Texas v. McCullough, 475 U.S. 134, 137 (1986) (discussing North Carolina v. Pearce, 395 U.S. 711, 723–25 (1969)); see also Alabama v. Smith, 490 U.S. 794, 798 (1989). "To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort." Bordenkircher v. Hayes, 434 U.S. 357, 363 (1978) (citing Pearce, 395 U.S. at 738). Under limited circumstances, a presumption of vindictiveness may arise; otherwise, a defendant must prove actual vindictiveness. See Smith, 490 U.S. at 795.

Unlike the defendants in Smith and Pearce, Petitioner was not resentenced after a successful appeal. But, even if the Court applies the principles espoused in Smith and Pearce to the context of an initial sentencing, Petitioner cannot show a reasonable likelihood that the sentence imposed was attributable to a vindictive or

retaliatory motive or actual vindictiveness by the trial court.[17] Far from punishing Petitioner for exercising a constitutional right, the sentencing judge explained his reasoning and relied on the severity of the crime (i.e., the amount of cocaine sold) and Petitioner's criminal history in deciding to impose a twenty-year sentence. Resp. Ex. C at 426-29. Petitioner had two prior convictions for possession of cocaine, a conviction for sale and delivery of cocaine, and a prior federal conviction for distribution of cocaine. Id. at 427. Petitioner had completed his federal probationary sentence approximately two months before he committed this offense. Id. As such, upon review of the record, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Ground Twelve(h) is due to be denied.

---

[17] Florida courts extended the concept of judicial vindictiveness to the context of initial sentencings where the sentencing judge had been involved in plea offers or deals that the defendant had rejected. See Wilson v. State, 845 So. 2d 142 (Fla. 2003); Baxter v. State, 127 So. 3d 726 (Fla. 1st DCA 2013). To determine whether a presumption of vindictiveness applies, Florida courts apply a totality-of-the-circumstances test, which requires a court to consider factors such as the court's participation in plea negotiations, comments made by the court that indicate a departure from the role of neutral arbiter, the disparity between the plea offer and the sentence imposed, and a lack of facts in the record that explains the reasons for the increased sentence. See Wilson, 845 So. 2d at 156; see also Williams v. State, 225 So. 3d 349, 356–58 (Fla. 3rd DCA 2017). Absent the presumption, a defendant must prove actual vindictiveness. Wilson, 845 So. 2d at 156. Here, there is no evidence that the trial court engaged in Petitioner's plea negotiations with the state.

### *Ground Twelve(i)*

Petitioner alleges that appellate counsel was ineffective for failing to raise a claim that Guzman engaged in sentencing manipulation by setting up the controlled buy within 1,000 feet of a church. Doc. 1 at 19, 23. Petitioner maintains that Guzman intentionally picked the location of the buy to increase the charge to a first degree felony punishable by a thirty-year maximum rather than a second degree felony punishable by a fifteen-year maximum. Id. Petitioner acknowledges that appellate counsel filed with the trial court a motion to correct sentencing error pursuant to Florida Rule of Criminal Procedure 3.800(b)(2) prior to filing Petitioner's initial brief; however, once the trial court denied the Rule 3.800(b)(2) motion, appellate counsel never raised the issue with the First DCA. Id. at 23.

Petitioner raised this issue in his petition alleging ineffective assistance of appellate counsel. Resp. Ex. Z at 29-30. Finding appellate counsel was not ineffective for failing to raise this claim during Petitioner's direct appeal, the First DCA denied the claim on the merits. Resp. Ex. BB. As such, there is a qualifying state court decision, and the Court will address this claim in accordance with the deferential standard for federal court review of state court adjudications.

In his Rule 3.800(b)(2) motion, Petitioner relied on State v. Steadman, 827 So. 2d 1022 (Fla. 3d DCA 2002), to support his claim of sentence manipulation. Resp. Ex. E. In Steadman, the Third District Court of Appeal held that to put forth a successful claim of sentence manipulation, the defendant must show that law enforcement personnel continued the sting operation for the sole purpose of enhancing the

defendant's sentence, and he received a harsher sentence as a result of law enforcement's actions. Id. at 1025-26.

The trial court found that Petitioner failed to establish sentence manipulation under Steadman, a Florida case. Resp. Ex. E at 18. A federal habeas court must defer to a state court's interpretation and application of state law. See Herring v. Sec'y, Dep't of Corr., 397 F.3d 1338, 1354-55 (11th Cir. 2005) ("The Florida Supreme Court already has told us how the issues would have been resolved under Florida state law had [petitioner's counsel] done what [petitioner] argues he should have done . . . . It is a 'fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.'"). Accordingly, Petitioner has not established that counsel was ineffective for not raising this argument during Petitioner's direct appeal. See Will v. Sec'y, Dep't of Corr., 278 F. App'x 902, 908 (11th Cir. 2008) ("Although an ineffective-assistance-of-counsel claim is a federal constitutional claim, which we consider in light of the clearly established rules of Strickland, when 'the validity of the claim that [counsel] failed to assert is clearly a question of state law, . . . we must defer to the state's construction of its own law.'") (citing Alvord v. Wainwright, 725 F.2d 1282, 1291 (11th Cir. 1984)).

Nevertheless, assuming that this claim can be construed as a federal constitutional challenge, the Court finds it is without merit. The Eleventh Circuit Court of Appeals holds that the doctrine of sentencing factor manipulation asks, "whether the manipulation inherent in a sting operation, even if insufficiently oppressive to support an entrapment defense, or due process claim, must sometimes

be filtered out of the sentencing calculus." <u>United States v. Sanchez</u>, 138 F.3d 1410, 1414 (11th Cir. 1998). "[T]o bring sting operations within the ambit of sentencing factor manipulation, the government must engage in extraordinary misconduct." <u>United States v. Ciszkowski</u>, 492 F.3d 1264, 1271 (11th Cir. 2007). "Government-created reverse sting operations are recognized and useful methods of law enforcement investigation," so "[t]he standard for sentencing factor manipulation is high." <u>Id.</u> "[The Eleventh Circuit] has never reduced a sentence on the basis of sentencing factor manipulation, <u>see</u> <u>United States v. Docampo</u>, 573 F.3d 1091, 1097–98 (11th Cir. 2009), so no binding precedent requires [the Eleventh Circuit] to countenance sentencing factor manipulation as a legitimate defense." <u>United States v. Lange</u>, 862 F.3d 1290, 1296 (11th Cir. 2017).

The Court cannot find that Guzman engaged in extraordinary misconduct in setting up Petitioner's controlled buy at Alcorn's residence. Alcorn testified that she had known Petitioner for approximately three years and saw him regularly. Resp. Ex. B at 254. Further, throughout the transaction, Petitioner informed Alcorn about rumors of her working undercover for the police, and patted her down for a wire before accusing her of paying him with police funds. <u>Id.</u> at 272-80. Despite his reservations about Alcorn's informant status, Petitioner nevertheless completed the drug exchange. <u>Id.</u> The Court finds it also relevant that Petitioner, unbeknownst to Guzman or Alcorn, invited David to Alcorn's residence to conduct a separate and distinct drug transaction. <u>Id.</u> at 266-67.

At trial, Guzman testified that he asked Alcorn to sit outside of her home to conduct the transaction because they had previously searched the location and he was able to see the entire exchange between Alcorn and Petitioner from across the street. Resp. Ex. B at 338. Guzman testified that when Petitioner began questioning Alcorn about working for the police, Guzman advised Alcorn to abandon the transaction and leave immediately. Id. at 324-25. However, Alcorn was able to complete the deal. Id. Viewing the totality of the circumstances, the Court cannot find that Guzman engaged in extraordinary misconduct. Thus, appellate counsel was not ineffective for failing to raise a meritless argument on appeal. Ground Twelve(i) is due to be denied.

### Ground Thirteen

Petitioner asserts that the postconviction court failed to address his claim that the video/audio recording of the drug transaction should have been inadmissible because Alcorn did not consent to wearing the wire device. Doc. 1 at 24. He contends that he raised this issue in ground five, sub-claim five of his Rule 3.850 motion.

Petitioner did raise this issue in ground five of his Rule 3.850 motion, and it appears that the trial court failed to consider the sub-claim in its order of denial. Resp. Ex. M at 26; 90-91. It is not clear if Petitioner is asserting a claim of ineffective assistance of trial counsel or a claim that the trial court erred in allowing the state to admit this evidence. Nevertheless, in any context, this issue is without merit because Alcorn testified that she agreed to help officers conduct the controlled buy in hopes of getting a reduced sentence for her pending charges. Resp. Ex. B at 256. Alcorn's

agreement to help the officers infers that she agreed to wear the wire device. This claim is without merit. Ground Thirteen is due to be denied.

Accordingly, it is

**ORDERED AND ADJUDGED:**

1.      The Petition (Doc. 1) is **DENIED** and this case is **DISMISSED WITH PREJUDICE**.

2.      The **Clerk** shall enter judgment dismissing this case with prejudice, terminate any pending motions, and close the file.

3.      If Petitioner appeals this denial, the Court denies a certificate of appealability. Because this Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.[18]

---

[18] The Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Here, after consideration of the record as a whole, the Court will deny a certificate of appealability.

**DONE AND ORDERED** at Jacksonville, Florida, this 16th day of July, 2019.

TIMOTHY J. CORRIGAN
United States District Judge

Jax-7

C:    Leel Demitrius Williams, #977065
       Donna A. Gerace, Esq.